PEARSONS *v.* WASHINGTON COLLEGE.

(*Knoxville.* September Term, 1914.)

1. **GIFTS. Rescission for fraud. Laches.**

The right to rescind a gift for fraudulent representations as to performance of the donor's conditions must be promptly asserted upon discovery of the fraud, a failure so to do amounting to an affirmance, and the declaration of intent to rescind must be prompt, unconditional, and unevasive and consistently adhered to, and hence, where the donor of a certain amount to a college on condition that it raise a certain amount by subscription, knew in 1909 that it had fraudulently represented performance of the condition, his bill to rescind the gift for such fraud not brought until 1913, was too late. (*Post, pp.* 606-608.)

Caces cited and approved: Precious Blood Society v. Elsythe, 102 Tenn., 40; Landreth Co. v. Schevenel, 102 Tenn., 486; Woodfolk v. Marley, 98 Tenn., 467; Ruohs v. Bank, 94 Tenn., 57; Street Railway Co. v. Giardino, 116 Tenn., 368; Latrobe v. Dietrich, 114 Md., 8; Angel v. Columbia Canal Co., 69 Wash., 550; Masson v. Bovert, 1 Denio, 69; M. W. A. v. Vincent, 40 Ind. App., 711; Kennedy v. Bender, 140 S. W., 491; Blank v. Aronson, 187 Fed., 241; Richardson v. Lowe, 149 Fed., 625; Grymes v. Sanders, 93 U. S., 55; Wilbur v. Flood, 16 Mich., 40; Cox v. Montgomery, 36 Ill., 396; Prewitt v. Bunch, 101 Tenn., 723.

2. **GIFTS. Fraud of donee. Ratification.**

Where a donor of a certain amount to a college on condition that it raise a certain amount by subscription after knowledge of the donee's fraudulent representation as to the performance of such condition, allowed the gift to remain uncancelled at the solicitation of the trustees of an institution with which the college had been consolidated, refrained from bringing suit, and imposed certain other conditions on the consolidated in-

stitution after consultation with the original donee, he thereby abandoned his purpose to rescind, and ratified the gift. (*Post*, *pp. 606-608.*)

3. PLEADING.   Fact or conclusion.

In a bill to rescind a gift on the ground of the donee's fraudulent representation as to the performance of conditions imposed on the gift, an allegation that the donee was not injured by the delay in bringing suit was a mere conclusion, where the particular facts were not stated, on which the court could pass, and would not be considered. (*Post*, *p.* 608.)

4. GIFTS.   Rescission for fraud of donee.   Injury to donee.

Where rescission of a gift is sought for the fraudulent representations of the donee as to its performance of a condition, the fact that the donee was not injured by the donor's delay in bringing suit is immaterial. (*Post*, *p.* 608.)

---

FROM WASHINGTON.

---

Appeal from the Chancery Court of Washington County.—HAL. H. HAYNES, Judge.

SUSONG & BIDDLE, for appellants.

HARR & BURROW, and EPPS & YOUNG, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill in the present case was filed by H. P. ·Pear-sons, administrator of the well-known philanthropist, Dr. D. K. Pearsons, to rescind, on the ground of fraud,

.a gift of $25,000 made by Dr. Pearsons to the defend-
.ant.

The bill alleges, in substance, that Dr. Pearsons,
.about July 4, 1906, made the donation above men-
tioned; that before it was made he imposed the con-
·dition that there should be $75,000 *bona fide* subscrip-
tions to the endowment fund of the college; that Dr.
.J. T. Cooter, president of the college, acting for it,
fraudulently represented to Dr. Pearsons that *bona
fide subscriptions* to the amount mentioned had been .
procured; that on the faith of these representations,
the gift was made; that these representations were
not true; that in fact subscriptions representing more
than $30,000, specified particularly in the bill, were
bogus or pretended; that Dr. Pearsons did not discover
the fraud which had been practiced on him until the
year 1909; that between the date of the gift and 1909,
that is, in the year of 1908, Washington College had
been united into one institution with Greeneville Tus-
·culum College; that as a result of the investigations
made by the managing officers of Washington & Tus-
·culum College, the consolidated concern, Dr. Pearsons
had learned the facts as stated.; that he was indignant
.and prepared to bring suit to recover the gift, but
.decided not to do so because the united college was
under a distinct management, though composed of a
joint board of trustees selected from the trustees of
the two institutions; that this board represented that
the defendant college was then out of existence; that
under the consolidated corporation a new management

was under control, and the school was being operated under different methods; that in view of these facts he was induced to agree that his gift might be held by the trustees of Washington & Tusculum College for the benefit of the consolidated institution upon the express condition that said consolidated institution should raise its endowment to $100,000 or more within a period fixed; that the officers and trustees of the consolidated institution, by gifts made directly to it, succeeded in bringing the total endowment of that institution, counting such endowments as Washington College had as part thereof, up to $100,000; that in the belief that the two schools were lawfully consolidated, and that $100,000 of valid endowment had at last been obtained, Dr. Pearsons withheld suit and permitted his gift to remain with the trustees of the joint institution; that after this time a suit was brought by the State, being *State, ex rel. Dobbson, v. Washington & Tusculum College,* to have the consolidation declared illegal; that after Dr. Pearsons was informed of the probable invalidity of the consolidation he determined upon reclaiming his gift in the event the final decree should dissolve the consolidation; that with this view he made arrangements for suit to be brought for its recovery, and authorized his counsel to bring an action to recover the gift in the event the consolidation should be held illegal; that Dr. Pearsons died in April, 1912, before the rendition of the final decree, which occurred on the 12th of November of the same year; that upon his

death the present complainant was qualified as representative in this State to conduct an administration ancillary to that in the State of Illinois, in which State Dr. Pearsons died; that since the death of Dr. Pearsons and the qualification of the present complainant in Illinois, said personal representative has been actively engaged in the investigation of the transactions between the defendant college and Dr. Pearsons; that the proof relating to these matters was widely scattered, and required much travel and time; that even with the utmost diligence suit could not be brought earlier by the administrator.

The bill further charges that a formal demand had been made upon Washington College for the repayment of the gift, but does not state the date of such demand.

There was an amendment which contained the allegation in round terms:

"No injury has resulted, or can result, to Washington College from the delay in bringing suit to claim said gift."

The bill was filed on June 2, 1913.

A demurrer was filed, containing several specifications, but only two grounds were relied on in the argument; that the complainant must be repelled because of the laches of the intestate and of himself, and also because the facts stated show an affirmation of the gift.

In the amendment Dr. Cooter was made a defendant, and a demurrer was filed to this part of the bill, but in

the view we take of the case this matter need not be further referred to.

The chancellor sustained the demurrer, dismissed the bill, and the case is here on the appeal of complainant.

The decree was correct. The rule is that where a rescission is sought for fraud the right must be promptly asserted, after notice of the fraud has been acquired. *Precious Blood Society* v. *Elsythe*, 102 Tenn., 40, 50 S. W., 759; *Landreth Co.* v. *Schevenel*, 102 Tenn., 486, 52 S. W., 148; *Woodfolk* v. *Marley*, 98 Tenn., 467, 40 S. W., 479; *Ruohs* v. *Bank*, 94 Tenn., 57, 73, 28 S. W., 303; *Street Railway Co.* v. *Giardino*, 116 Tenn., 368, 92 S. W., 855; *Latrobe* v. *Dietrich*, 114 Md., 8, 78 Atl., 983; *Angel* v. *Columbia Canal Co.*, 69 Wash., 550, 125 Pac. 766; *Masson* v. *Bovert*, 1 Denio (N. Y.), 69, 43 Am. Dec., 651. A failure to rescind with reasonable promptitude amounts to affirmance of the contract. *Modern Woodmen of America* v. *Vincent*, 40 Ind. App., 711, 80 N. E., 427, 82 N. E., 475, 14 Ann. Cas., 89. Where the party defrauded discovers the fraud and remains silent under circumstances indicating acquiescence, or where he acts in relation to the subject-matter of the contract in such a way as to imply a willingness to stand by it, he ratifies it and cannot subsequently avoid it. *Latrobe* v. *Dietrich*, supra. Any conscious recognition of the contract as binding with knowledge of the fraud bars the right to rescission. *Kennedy* v. *Bender* (Tex. Civ. App.), 140 S. W., 491; same case in supreme court on certified

questions, 104 Tex., 149, 135 S. W., 524. When entitled to rescind a contract on the ground of fraud, the party must announce his purpose to do so promptly, unconditionally, and unevasively upon discovery of the fraud. *Blank* v. *Aronson*, 187 Fed., 241, 109 C. C. A., 327. The intention to rescind must be manifested by some notice or outward manifestation which will apprise the other party of such intention, and the party entitled to rescind must not vacillate in his purpose, but must consistently adhere to it. *Richardson* v. *Lowe*, 149 Fed., 625, 79 C. C. A., 317; *Grymes* v. *Sanders*, 93 U. S., 55, 23 L. Ed., 798. It has been held that fifteen months is too long a delay. *Wilbur* v. *Flood*, 16 Mich., 40, 45-46, 93 Am. Dec., 203. In another case seventeen months was held too long. *Cox* v. *Montgomery*, 36 Ill., 396, 398. In *Precious Blood Society* v. *Elsythe*, supra, three years was held too long. In *Landreth Co.* v. *Schevenel*, supra, a delay of ten months was considered too long; in *Woodfolk* v. *Marley*, supra, three years. In cases not involving fraud the rule is not so strict. *Prewitt* v. *Bunch*, 101 Tenn., 723, 50 S. W., 748.

Every case turns largely upon its own facts.

In the case before us Dr. Pearsons acquired knowledge of the fraud in 1909, but the suit was not brought until 1913, a delay of four years. This was too long. Moreover, the facts recited to excuse this delay not only fail to excuse it, but show an affirmance of the gift. These facts are that Dr. Pearsons was induced to allow the gift to remain uncanceled at the solicita-

tion of the trustees of the consolidated college. It is immaterial that before receiving from these trustees the assurances already recited he had prepared to bring suit. It only shows the more clearly that he had abandoned the purpose to rescind; so of his again preparing to bring suit and instructing counsel to do so in case the consolidation should be declared void. All this presupposes that the gift should continue undisturbed except under certain conditions fixed by himself long after the gift had been made. It is to be observed that Washington College was not consulted about these latter conditions. Dr. Pearsons necessarily knew that the consolidated institution had only obtained the gift, if at all, through the act of Washington College, and when he agreed that the consolidated institution should retain the gift, he thereby necessarily confirmed the original gift.

As to so much of the amended bill as alleges that Washington College was not injured by the delay to bring suit, this cannot be considered, being a mere conclusion, without stating the particular facts on which the court could pass judgment; moreover, we do not understand that where a rescission is sought for fraud, such a consideration intervenes.

The result is that the decree of the chancellor must be affirmed.